CATHEY THOMAS SUMMERS ET AL *v.* AVA DAWN SUMMERS ET AL

5-4064                                          408 S. W. 2d 887

Opinion delivered December 5, 1966

*O. H. Hargraves* and *McKnight & Blackburn,* for appellant.

*Fletcher Long* and *Carroll C. Cannon,* for appellee.

GEORGE ROSE SMITH, Justice. Leland Summers died testate in 1964, leaving his property to his widow and an adopted daughter, the principal appellees. At his death Leland was in possession of the 49 acres now in dispute. The appellants, Leland's seven children by his first wife, brought this suit for partition of the property. They contend that Leland received, under his father's will, only a life estate in the property, with the fee simple passing at Leland's death to all his children. The chancellor rejected this contention, holding that Leland owned the land in fee simple. The sole question is that of determining what estate vested in Leland under his father's will.

Leland's father, V. L. Summers, owned the land at his death in 1932. V. L. evidently prepared his own will, which was written in longhand. In quoting the will we have twice italicized one word, the pronoun "they," because the only real problem in the case is that of deciding to whom V. L. meant this pronoun to refer. Here is the will:

March 24—1930

To who this may concern.

I this day do write my last will and testiment. That my wife and my son Leland Summers shall have all my land stocks or money what ever or where ever it is or what ever it may be now or in the future of any kind.

And that they shall not be required to make bond of any kind.

That my wife Page Summers shall have the land or the rent her comon life to do as she will and that after all dets and all my dets has been paid and the dets of my wife Page Summers, my son Leland shall take the whole of the remainder, and shall keep same till all his children is of age and then if *they* wish *they* shall have the write to sign their write a way to who ever they may wish and their deed shall be good to all who ever or what so ever. This is my last and only will.

March 24—1930. V. L. Summers.

Witness   C. T. Moore

Witness   C. E. Willis      March 24, 1930

We think it clear that the pivotal pronoun was meant to refer to Page and Leland, not to Leland's children. When the will is so construed the testamentary scheme is stated with simplicity and clarity, despite V. L.'s limited education. He directed that his widow

(who died in 1949) have a life estate, with the remainder going to Leland. Leland was to keep the property until his children became of age. At that time "they," meaning Page and Leland, would have the right to sell the property "to who ever they may wish and their deed shall be good." Quite evidently V. L. did not mean for their deed to be good immediately after his own death; so he added this precautionary clause to avoid any uncertainty about his intentions.

By contrast, if the pronoun "they" is construed as a reference to Leland's children, the will lacks both simplicity and clarity. Under that view the explicit remainder to Leland would be reduced to a life estate, even though V. L. plainly realized that the two estates were not the same. Moreover, the asserted devise of the remainder to Leland's children would have to be tortured, by inference and indirection, from the beneficiaries' declared right to sign their rights away. No doubt it is true, under the strict rules of grammar, that the antecedent of a pronoun is usually the nearest preceding noun, but that rule ought not to be woodenly applied to defeat what clearly appears to have been the testator's intention.

Affirmed.